## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| BARBARA STONE and PEARL GREEN, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Civil Action No. CV-05-S-453-NE |
| CITY OF HUNTSVILLE, A MUNICIPAL CORPORATION, d/b/a VON BRAUN CENTER, | ) ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Barbara Stone and Pearl Green brought suit against defendant, the City of Huntsville, a Municipal Corporation d/b/a Von Braun Center ("VBC"), alleging a hostile work environment and unequal pay on the basis of race and gender, retaliation, and negligent supervision, training, and retention.  This matter is before the court on defendant's motion for summary judgment (doc. no. 31) and motion to strike (doc. no. 39).  Defendant seeks dismissal of all claims.

### PART ONE

*Summary Judgment Standard*

Federal Rule of Civil Procedure 56(c) provides, in part, that summary judgment not only is proper, but also that it "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that

the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment,

after adequate time for discovery and upon motion, against a party who fails to make

a showing sufficient to establish the existence of an element essential to that party's

case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 322(1986).

> In making this determination, the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment.
>
> The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case.  The relevant rules of substantive law dictate the materiality of a disputed fact.  A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

*Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (quoting

*Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)); *see also United States v.*

*Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991) (*en banc*).

## PART TWO

*Summary of Relevant Facts*

VBC is a multi-purpose entertainment venue featuring an Arena, a Concert

Hall, and a Playhouse Theater to accommodate concerts, Broadway performances,

ballets, symphonies, and a full range of sporting events.[1]  Ron Evans is Executive

Director of VBC, Steve Maples is Chief Operating Officer, and Michael Vojticek is

Assistant Director.[2]  VBC has approximately sixteen different departments, one of

which is the Arena Operations Department (hereinafter "Operations Department").[3]

On average, VBC employs approximately fifty-one part-time or on-call

employees to assist in setting up events, maintaining the facility, and cleaning up after

events.[4]  The part-time employees assigned to work in the Operations Department are

classified as crewmen.[5]  Within the Operations Department, crewmen are assigned to

work in one of three areas: Arena Operations, North Exhibit Hall, or South Exhibit

Hall.[6]   Throughout their employment at VBC, Plaintiffs have worked in the

Operations Department, assigned to Arena Operations.[7]

Jimmy Clark is the Director of Arena Operations.[8]  Within Operations, three

African-American supervisors, Junior Cross, Ray Cross or Lurinzo Sullivan,

supervise the employees.[9]  Junior Cross supervises the Arena Operations employees

---

[1] *See* doc. no. 32 at 3.

[2] *See id.*

[3] *See id.*

[4] *See id.*

[5] *See id.* at 3-4.

[6] *See id.* at 4.

[7] *See id.*

[8] *See id.*

[9] *See id.*

3

who work Event Set-Up, entailing building stages, setting up chairs, laying down turf and making ice.[10]  Ray Cross supervises the Arena Operations employees in Event Support, which encompasses working during events at VBC by sweeping the concourse and monitoring the level of supplies in the restrooms.[11]  Lurinzo Sullivan supervises the Arena Operations employees in Clean-Up, which includes picking up after an event and mopping floors.[12]

Plaintiff Barbara Stone was hired by VBC in August 1998 at a rate of $6.00 per hour and is still employed by VBC as a part-time crewman in Arena Operations working in Event Support.[13]  Since the beginning of her employment with VBC, Stone understood she could and should report any incidents she perceived to be discriminatory to a supervisor.[14]

---

[10] *See* doc. no. 32 at 4.

[11] *See id*. at 5.

[12] *See id*.

[13] *See id*.

[14] *See id*, ¶ 16.  Appendix II to the Uniform Initial Order provides: "Any statements of fact that are disputed by the non-moving party must be followed by a specific reference to those portions of the evidentiary record upon which the dispute is based.  *All material facts set forth in the statement required of the moving party will be deemed to be admitted for summary judgment purposes unless controverted by the response of the party opposing summary judgment*."  Doc. no. 12 (Uniform Initial Order) at 16-17.

This fact regarding plaintiff Stone's understanding about reporting all incidents of perceived discrimination will be deemed admitted because the plaintiff's response to this fact is virtually incomprehensible in that it discusses persons and evidence that have nothing to do with the fact being asserted by defendant.  *See* doc. no. 38 (Plaintiffs' Brief in Opposition) at 2, ¶ 16 ("Denied.  Mr. Evans' duties were not reduced, but were changed to cleaning the entire arena . . . .").  It is as if plaintiffs were using statements of fact to rebut a brief in a different case, and failed to notice this error which occurs repeatedly throughout plaintiffs' response to the current summary judgment motion.

Because the instances of incomprehensible and irrelevant responses to statements of fact are

Plaintiff Pearl Green was hired by VBC in the spring of 2001 as a part-time crewman in Cleanup at a starting rate of pay of $6.25 per hour.[15] Green remained in Cleanup, which consisted of mopping and sweeping the arena, for the first six months of her employment.[16] After six months, Green was assigned to Set-up which entailed putting the stage together and setting up chairs and tables.[17] After one year, Green was reassigned to work in Events Support, which included tasks such as sweeping and insuring the restrooms were stocked during events.[18]

During her four years of employment with VBC, Green volunteered for extra duties two or three times, consisting of skirting a table or vacuuming the carpet, which are duties normally associated with Clean-up and Set-up.[19] Green never repaired gashes in the ice nor did she clean the blades on the Zamboni.[20] Green replaced hockey nets about two times.[21] Green understood if she felt discriminated against, she could and should report the discrimination to her supervisors.[22] Green's employment with VBC ended in January 2005, when she voluntarily stopped

---

so numerous, the court will not point them out, but will instead use defendant's statement of facts that have been un-rebutted by plaintiffs.

[15] *See* doc. no. 32 at 6.

[16] *See id.*

[17] *See id.*

[18] *See id.*

[19] *See id.* at 6-7

[20] *See id.* at 7.

[21] *See id.*

[22] *See id.*

reporting for work at VBC.[23]

The only racially derogatory comment to which Green and Stone were subjected during their employment at the VBC was Clark's statement to the crew: "You people are the most negative people I ever worked with."[24]  Green and Stone talked to their supervisors, Junior Cross and Ray Cross, about Clark's comments.[25] Junior Cross, Ray Cross, and Sullivan informed Vojticek and Maples about the comment.[26]  Vojticek and Maples verbally counseled Clark, who informed them he had no racial intent and that he had already apologized to the crew.[27]  Clark's statement had no effect on and did not interfere with Green or Stone's ability to perform their jobs.[28]

Stone and Green each assert a separate comment made by Clark that contributed to a sexually hostile work environment.  Green asserts that Clark told her a job he was posting on the bulletin board "was not for women because women have women's problems."[29]  Green does not remember when Clark made the statement, but she did not apply for the position because of Clark's comment.[30]  Green did not

---

[23] *See* doc. no. 32 at 7.

[24] *See id.*

[25] *See id.* at 8.

[26] *See id.*

[27] *See id.*

[28] *See id.* at 7.

[29] *See id.* at 8.

[30] *See id.* at 8-9.  *See also* doc. no. 38 at 5, ¶ 38.

complain to anyone about Clark's statement.[31]

Stone asserts that Clark made the following statement to her concerning setup work requiring a high degree of physical strength, including assembling the basketball floor: "That type of work was too hard for women."[32]  Stone mentioned Clark's statement to Junior Cross, Ray Cross, and Sullivan, but she did not complain to anyone else.[33]

Stone and Green filed charges of discrimination with the Equal Employment Opportunity Commission (EEOC) in November 2003, alleging pay discrimination on the basis of race and gender.[34]  Stone and Green claimed they were retaliated against in the Spring of 2004 when VBC limited all part-time employees (African American and Caucasian; male and female) to working 32 hours per work week.[35]  VBC limited all part-time employees to working 32 hours per week upon the recommendation of Vojticek, who made the recommendation because allowing part-time employees to work full-time hours would result in the need to extend full-time benefits to all employees.[36]

VBC laid off almost all of the part-time Arena Operations crewmen in late

---

[31] *See* doc. no. 32 at 9.

[32] *See* doc. no. 32 at 9.

[33] *See id.*

[34] *See id.* at 10.

[35] *See id.*

[36] *See id.*

Summer/early Fall of 2004.[37]   Maples directed the lay-off of most part-time employees because no events were scheduled and full-time staff would be able to cover the work with the assistance of a few part-time employees.[38]  Both Stone and Green learned of the lay-off from Clark who explained the lay-off was temporary.[39] Stone and Green admit that all part-time employees, regardless of race or gender, were affected by the hour reduction and lay-off.[40]  Stone and Green also admit that Ivan Allen, a part-time African-American crewman who filed an EEOC charge at the same time they filed their charges, continued to work at VBC during the lay-off period.[41]

Stone and Green also complain that they were discriminated against on the basis of race and gender with regard to pay since Robert Simmons, a white male crewman, was paid $7.25 per hour when they were paid $7.00 per hour.[42]  From April 2003 through July 2005, Simmons made $0.25 more than Green, and from April 2003 through November 2005, Simmons made $0.25 more than Stone.[43]

Plaintiffs brought suit alleging claims of race and gender discrimination and

---

[37] See id. at 10-11.

[38] See doc. no. 32 at 11.

[39] See id.

[40] See id.

[41] See id.

[42] See id. at 11-12.

[43] See id. at 13.

harassment under Title VII arising from their employment as part-time crew persons in VBC's Operations Department.  Plaintiffs also allege claims of retaliation and negligent supervision, training, and retention of Jimmy Clark.

**PART THREE**

*Discussion of Plaintiffs' Claims*

A.      <u>Hostile Work Environment on the Basis of Race and Gender</u>

To succeed on a hostile work environment claim, each plaintiff must show that: (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was based upon her gender or race; (4) the harassment was sufficiently severe or pervasive as to alter the terms and conditions of her employment; and (5) there is a basis for holding her employer responsible under a theory of either vicarious or direct liability.  *See, e.g.*, *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998); *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998); *Johnson v. Booker T. Washington Broadcasting Service, Inc.*, 234 F.3d 501, 508 (11th Cir. 2000).

Defendant argues that it is entitled to summary judgment on plaintiffs' hostile work environment claims because neither plaintiff can show that any alleged harassment (racial or sexual) was severe or pervasive.  The only racially derogatory comment to which Green and Stone were subjected during their employment at the VBC was Clark's statement to the crew: "You people are the most negative people

I ever worked with."[44]  With respect to the sexual hostile work environment claims, Green asserts that Clark told her a job he was posting on the bulletin board "was not for women because women have women's problems."[45] Stone asserts that Clark made the following statement to her concerning setup work requiring a high degree of physical strength, including assembling the basketball floor: "That type of work was too hard for women."[46]

The requirement that the alleged harassment be sufficiently severe or pervasive to alter the terms and conditions of plaintiff's employment contains both an objective and a subjective component.  To satisfy this element, plaintiff must show *both* that she subjectively believed the environment to be hostile or abusive, *and* that a reasonable person also would perceive it as such.  *See, e.g., Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21-22 (1993).  When evaluating the objective severity of offensive conduct, courts examine the totality of the circumstances, including such factors as:  (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct was threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interfered with plaintiff's work performance.  *See, e.g., Johnson,* 234 F.3d at 509 (quoting *Mendoza v. Borden, Inc.,*

---

[44] *See* doc. no. 32 at 7.

[45] *See* doc. no. 32 at 8.

[46] *See* doc. no. 32 at 9.

195 F.3d 1238, 1246 (11th Cir. 1999)); *Edwards v. Wallace Community College,* 49 F.3d 1517, 1521 (11th Cir. 1995).  It is not necessary to prove each of the factors individually.  Nevertheless, the factors, taken together, must reveal conduct that is so extreme that it caused a material change in the terms and conditions of a plaintiff's employment, and created a working environment that a reasonable person would find discriminatorily abusive.  *See, e.g., Faragher*, 524 U.S. at 788 (citations omitted).

While plaintiffs attempt to refer to evidence of harassing conduct by Clark to other employees, they fail to address how Clark's conduct toward them rose to the level required to sustain a claim under Title VII.  Plaintiffs failed to satisfy both the subjective and objective components of this inquiry.  Plaintiffs failed to produce any evidence showing how the isolated remarks interfered with their work performance.  Upon review of the parties' submissions, the court agrees with defendant that plaintiffs' inability to show either severe or pervasive harassment entitles it to summary judgment on this claim.

B.    Unequal Pay on the Basis of Race and Gender

Plaintiffs claim that they were discriminated against on the basis of race and gender with regard to pay since Robert Simmons, a white male crewman, was paid $7.25 per hour when they were paid $7.00 per hour.  Disparate pay claims under Title VII are governed by the familiar burden-shifting framework set out by the Supreme

11

Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  *See Miranda v. B&B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1528 (11th Cir. 1992).

Thus, plaintiffs bear the initial burden of establishing a prima facie case of discrimination.  *McDonnell Douglas*, 411 U.S. at 802; *see also Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253-54 & n.6 (1981).  "The effect of the presumption of discrimination created by establishment of the prima facie case is to shift to the employer the burden of producing legitimate, non-discriminatory reasons for the challenged employment action."  *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997) (citing *McDonnell Douglas*, 411 U.S. at 802; *Burdine*, 450 U.S. at 254).  To rebut the presumption of intentional discrimination raised by a plaintiff's demonstration of a prima facie case, "the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the [contested employment decision]."  *Burdine*, 450 U.S. at 255.  If a defendant carries its burden of producing "admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus," *Burdine*, 450 U.S. at 257, the presumption of discrimination created by the prima facie case "drops from the case," and "the factual inquiry proceeds to a new level of specificity."  *Id.* at 255 & n.10.  The burden then shifts to the plaintiffs to "come forward with evidence, including the previously produced evidence

establishing the prima facie case, sufficient to permit a reasonable fact finder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision," but merely pretext for intentional discrimination. *Combs*, 106 F.3d at 1528 (citing *Burdine*, 450 U.S. at 256; *McDonnell Douglas*, 411 U.S. at 804).  *Cf. Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148 (2000) (holding that "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.").  If a plaintiff does so, then he or she "is entitled to survive summary judgment." *Combs*, 106 F.3d at 1529**.** "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Reeves*, 530 U.S. at 143.

To establish a *prima facie* case of racial or gender discrimination, each plaintiff must show that she is a member of a protected class and that the job she performed was similar to higher paying jobs performed by males outside the protected class. *See, e.g., Miranda*, 975 F.2d at 1529.  Plaintiffs point to Simmons, a white male crewman, who was paid twenty-five cents an hour more than they were.

Defendant first argues that Simmons is not a similarly situated comparator

because he performed duties on ice that plaintiffs refused to perform.[47]   Defendant

maintains that to be "similarly situated," one must be "nearly identical" in all respects,

and that merely having the same title of "crewman" is not enough.   Defendant cites

*Mannicia v. Brown,* 171 F.3d 1368 (11th Cir. 1999), in support.   The court agrees that

"when a plaintiff alleges discriminatory discipline, to determine whether employees

are similarly situated," the Eleventh Circuit evaluates whether "the quantity and

quality of the comparator's misconduct [is] nearly identical to prevent courts from

second-guessing employers' reasonable decisions and confusing apples with

oranges."   *Burke-Fowler v. Orange County, Florida*, 447 F.3d 1319, 1323 & n.2

(11th Cir. 2006).   But in considering discrimination cases where disparate pay is

alleged, the Eleventh Circuit also has distinguished between the more strict standard

under the Equal Pay Act, requiring a plaintiff to prove "that she performed

substantially similar work for less pay," and the "relaxed standard of similarity

between jobs" in Title VII cases.[48]   *Miranda*, 975 F.2d at 1526; *accord Lavin-*

---

[47] Plaintiffs dispute that others would not work on the ice and point to testimony from supervisors indicating that other employees including plaintiffs performed ice-related tasks. *See* doc. no. 38 at 18.

[48] Although plaintiffs alleged disparate pay claims under both Title VII and the Equal Pay Act, defendant only moved for summary judgment under Title VII.   Under the Equal Pay Act, a "plaintiff establishes a prima facie case by comparing the jobs held by the female and male employees, and by showing that those jobs are substantially equal."   *Miranda*, 975 F.2d at 1533. After a plaintiff establishes a prima facie case, an employer must prove by a preponderance of the evidence that the differential is justified by one of four exceptions set forth in the Act: (1) a seniority system; (2) a merit system; (3) a system which measures earnings by quantity or quality; and (4) a differential based on any factor other than sex.   *Price v. Lockheed Space Operations Co.*, 856 F.2d 1503, 1505 (11th Cir. 1988).   Under the Equal Pay Act, however, plaintiffs need not prove an intent

*McEleney v. Marist College*, 239 F.3d 476, 480 (2d Cir. 2001).

Upon review of the evidence submitted by the parties, the court concludes that Simmons is a proper comparator and is similarly situated to plaintiffs for purposes of Title VII.  Sufficient evidence has been submitted by the parties to show that those filling the position of "crewman" performed similar duties and received relatively similar pay for performing those duties.  In attempting to explain the difference in pay between plaintiffs and Simmons, defendant points to purported individual characteristics possessed by Simmons which led to his raise in pay (see discussion of pretext below) — not to any special designation in status or job description of the type of "crewman" position occupied by Simmons versus that performed by plaintiffs. Therefore, defendant cannot prevail on its challenge to the establishment of a *prima facie* case, and is not entitled to summary judgment on this basis.

Defendant next argues that there is insufficient evidence that the difference in pay between Simmons and plaintiffs was based on race or gender.  Defendants explain as their non-discriminatory reason for the pay differential that Clark and Pugh recommended that Simmons be paid $7.25 per hour because he showed great initiative, a strong work ethic, and performed tasks more difficult than those

---

to discriminate like they must under Title VII.  *See EEOC v. Reichhold Chemicals, Inc.*, 988 F.2d 1564, 1570 (11th Cir. 1993) ("Although Title VII affords a plaintiff a less stringent standard of proof on the similarity of the jobs, she must establish an intent to discriminate.")

performed by other part-time crewmen.[49]   Plaintiffs counter with testimony from

supervisors Ray Cross and Junior Cross that Simmons did not volunteer or take

initiative more than other employees, including plaintiffs.[50]  Also, plaintiffs submitted

evidence of comments made by Clark that displayed racial and gender animus.  Even

if the comments were insufficiently severe or pervasive to support a hostile work

environment claim, these comments are relevant to show intent or discriminatory

animus on the part of defendant.

At minimum, a fact dispute exists on the issue of pretext, and therefore

summary judgment is inappropriate on the Title VII disparate pay claim based on race

and gender.[51]  Accordingly, the motion is due to be denied in this respect.

C.    Retaliation

"Retaliation is a separate violation of Title VII."  *Gupta v. Florida Board of*

*Regents*, 212 F.3d 571, 586 (11th Cir. 2000).  Section 704(a) of Title VII of the Civil

Rights Act of 1964 provides protection for employees who oppose or participate in

---

[49] *See* doc. no. 32 at 13.

[50] *See* doc. no. 38 at 17-18.

[51] The court notes that plaintiffs attempted to assert a disparate pay claim on the basis of race and gender under both Title VII and the Equal Pay Act.  *See* doc. no. 1 at 5-7 (Complaint).  Of course, the Equal Pay Act only prohibits wage discrimination on the basis of gender.  *See* 29 U.S.C. § 206(d)(1).  Defendant, however, did not move for summary judgment on the Equal Pay Act claims, and therefore did not discuss the different legal standard under that Act.  *See infra*. at 14-15 & n. 48 (discussing the different standard of "similarity" under Title VII and the Equal Pay Act).  Thus, the court will not address the issue at this juncture.  This does not preclude defendant from making a motion for judgment as a matter of law under Rule 50 if the standards of the Equal Pay Act are not satisfied.

activities to correct an employer's discriminatory practices.

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).  Congress thus recognized two predicates for retaliation claims:  one for *opposition* to discriminatory practices, and another for *participation* in protected activity.

> Under the opposition clause, an employer may not retaliate against an employee because the employee "has opposed any practice made an unlawful employment practice by this subchapter." . . . And, under the participation clause, an employer may not retaliate against an employee because the employee "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

*Equal Employment Opportunity Commission v. Total System Services, Inc.*, 221 F.3d 1171, 1174 (11th Cir. 2000) (citations omitted).

The filing of a formal charge of discrimination with the EEOC clearly is protected under the "participation clause."  *See, e.g., Berman v. Orkin Exterminating Co.*, 160 F.3d 697, 702 (11th Cir. 1998).  That clause protects actions and statements which "occur in conjunction with or after the filing of a formal charge with the EEOC."  *Total System Services, Inc.*, 221 F.3d at 1174 (citation and footnote omitted).

17

Generally speaking, a plaintiff must prove three elements to establish a *prima facie* case of retaliation:  (1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) there was a causal linkage between the protected conduct and the adverse employment action.  *See, e.g., Bass v. Board of County Commissioners*, 256 F.3d 1095, 1117 (11th Cir. 2001) (Title VII); *Johnson v. Booker T. Washington Broadcasting Service, Inc.*, 234 F.3d 501, 507 (11th Cir. 2000) (Title VII); *Brungart v. BellSouth Telecommunications, Inc.*, 231 F.3d 791, 798 (11th Cir. 2000) (FMLA); *Gupta v. Florida Board of Regents*, 212 F.3d 571, 587 (11th Cir. 2000) (Title VII); *Farley v. Nationwide Mutual Insurance Co.*, 197 F.3d 1322, 1336 (11th Cir. 1999) (ADA); *Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir. 1998) (Title VII); *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1454 (11th Cir. 1998) (Title VII); *Little v. United Technologies*, 103 F.3d 956, 959 (11th Cir. 1997) (Title VII); *Meeks v. Computer Associates International*, 15 F.3d 1013, 1021 (11th Cir. 1994) (Title VII); *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993) (Title VII and § 1981).

"[A] close temporal proximity between two events *may* support a finding of a causal connection between those two events." *Wascura v. City of South Miami*, 257 F.3d 1238, 1244-45 (11th Cir. 2001) (emphasis supplied) (citing *Brungart v. BellSouth Telecommunications, Inc.*, 231 F.3d 791, 799 (11th Cir. 2000) (stating

"[t]he general rule is that close temporal proximity between the employee's protected conduct and the adverse employment action *is* sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection") (emphasis supplied)); *see also, e.g.*, *Bass,* 256 F.3d at 1119 ("Close temporal proximity between the protected activity and the adverse action *may be* sufficient to show that the two were not wholly unrelated.") (emphasis supplied) (citing *Gupta*, 212 F.3d at 590 ("For purposes of a prima facie case, 'close temporal proximity' *may be* sufficient to show that the protected activity and the adverse action were not 'wholly unrelated.'") (emphasis supplied) (in turn quoting *Farley*, 197 F.3d at1337)).

As the Supreme Court has observed, however, the temporal gap between events must be "very close."  *Clark County School District v. Breeden*, 532 U.S. 268, 273 (2001) (*per curiam*) (quoting *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001), and also citing *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997), and *Hughes v. Derwinski*, 967 F.2d 1168, 1174-1175 (7th Cir. 1992), for the proposition that three-month and four-month gaps, respectively, between an employer's knowledge of protected activity and an adverse employment action are not sufficiently close to serve as circumstantial evidence of a causal relationship between the two events).[52]

---

[52] In full text, the Supreme Court's statement in *Breeden* is as follows:

The cases that accept mere temporal proximity between an employer's knowledge of

Even prior to the Supreme Court's decision in *Breeden*, the Eleventh Circuit had required that the interval between events be brief.  In *Bass*, for example, the plaintiff began to suffer adverse employment actions within a matter of days after filing an EEOC charge on December 19, 1995:

> In December 1995, on his first day as a Training Instructor, Bass was assigned to clean out a warehouse — work ordinarily done by inmates supplied by the Department of Corrections.  Between December 1995 and April 1996, Bass had no routine work assignment, performed custodial and clerical duties, and usually was supervised by personnel who were less senior than he.  Middleton, who was in charge of the Training Instructors, and Chief Smith ordered Bass not to record on his work logs the custodial and clerical work he was performing.

*Bass*, 256 F.3d at 1101.  The Eleventh Circuit found that "[t]he close temporal proximity between filing of the EEOC complaint and the adverse actions is sufficient in this case to satisfy the third prong of the prima facie case of retaliation." *Bass*, 256 F.3d at 1119.  In *Donnellion v. Fruehauf Corp.*, the Eleventh Circuit held that a temporal gap of only one month between the plaintiff's act of filing an EEOC charge alleging that her employer denied her a sales representative position because of her sex and subsequent termination of the plaintiff's employment was sufficiently close

---

protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be "very close," *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (C.A.10 2001).  *See e.g., Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (C.A.10 1997) (3-month period insufficient); *Hughes v. Derwinski*, 967 F.2d 1168, 1174-1175 (C.A.7 1992) (4-month period insufficient).  Action taken (as here) 20 months later suggests, by itself, no causality at all.

*Clark County School District v. Breeden*, 532 U.S. 268, 273-74 (2001) (per curiam).

to establish a causal nexus.  794 F.2d 598 (11th Cir. 1996)

On the other extreme, temporal gaps of fifteen to twenty months are outside the pale of reasonableness.  *See, e.g., Breeden*, 532 U.S. at 273-74 (holding that twenty month gap "suggests, by itself, no causality at all"); *Maniccia v. Brown*, 171 F.3d 1364 (11th Cir. 1999) (holding that gaps of fifteen and twenty-one months between the employee's and employer's respective actions were too great to support a causal nexus); *see also*, *e.g.*, *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 n.4 (11th Cir. 2001) (opining that a two year break between the plaintiff's grievance and the employer's adverse action "probably would prevent a court from finding a causal nexus").

> Assuming, as the district court did, that the transfer to the jail was an adverse employment action, Appellant's transfer and termination occurred 15 and 21 months, respectively, after Appellant filed her grievance against her supervisor.  Far from demonstrating a pattern of retaliatory activity, these two employment actions were isolated events that had no temporal relationship to Appellant's protected activity.  The more than 15-month period that elapsed between Appellant's grievance and the alleged adverse employment actions belies her assertion that the former caused the latter.  *See, e.g.*, *O'Connor v. Chicago Transit Auth.*, 985 F.2d 1362, 1370 (7th Cir. 1993) (9-month gap between protected activity and adverse employment action precluded reasonable inference of causation); *Causey v. Balog*, 162 F.3d 795, 803 (4th Cir. 1998) (13-month delay between protected activity and termination too long for causation to be established); *Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1395 (10th Cir. 1997) (4-month lag between protected activity and termination not sufficient to justify an inference of causation); *cf. Donnellon v. Fruehauf Corp.*, 794 F.2d 598, 601 (11th Cir. 1986) (averring that fact plaintiff was discharged only one month after filing

complaint with EEOC "belies any assertion by the defendant that the plaintiff failed to prove causation").

*Maniccia*, 171 F.3d at 1369-70 (footnote omitted).

The *Maniccia* court's approving citation of the Tenth Circuit's opinion in *Conner v. Schnuck Markets,* 121 F.3d 1390, 1395 (10th Cir. 1997), when read in conjunction with the other decisions relied upon, appears to indicate that the expiration of four months or more between a plaintiff's engagement in protected activity and a subsequent adverse employment action nullifies any inference of causation premised solely on the temporal sequence of events.  That conclusion is buttressed by the Eleventh Circuit's opinion in *Wascura v. City of South Miami*, 257 F.3d 1238 (11th Cir. 2001), holding that a three and one-half month interval between a plaintiff's notice to her employers of her need for extended leave, because of her son's terminal illness, and her subsequent termination did *not*,

> standing alone, show that the City's articulated reasons for her termination were pretextual, *see e.g.*, *Conner v. Schnuck Markets, Inc*., 121 F.3d 1390, 1395 (10th Cir. 1997) (holding that four-month time lag between plaintiff's participation in protected activity and his termination was, by itself, insufficient to justify an inference of causation); *Richmond v. ONEOK, Inc*., 120 F.3d 205, 209 (10th Cir. 1997) (affirming district court's holding that three-month period of time between plaintiff's protected activity and termination was, standing alone, insufficient to establish a causal connection).

*Wascura*, 257 F.3d at 1245; *see also id*. at 1248 ("In light of the other evidence in the record, the three and one-half month temporal proximity is insufficient to create a jury

issue on causation."). *Cf. Sierminski v. Transouth Financial Corp.*, 216 F.3d 945, 951 (11th Cir. 2000) (holding, in the context of a retaliation claim founded on Florida's Whistleblower Act, that a temporal gap of seven months between the plaintiff's protected conduct and subsequent termination was too great to establish that the two events were casually related, especially when the record was replete with reasons for the termination unrelated to plaintiff's protected conduct).

Other circuits also have concluded that the temporal proximity between protected activity and a following adverse employment action must be "very close" when it is the primary basis for concluding that a causal nexus exists. *See O'Neal v. Ferguson Construction Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001) ("Unless there is very close temporal proximity between the protected activity and the retaliatory conduct, the plaintiff must offer additional evidence to establish causation."); *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) (holding that three month period, standing alone, is insufficient to establish causation); *Hughes v. Derwinski*, 967 F.2d 1168, 1174-75 (7th Cir. 1992) (finding four month period of time between plaintiff's protected activity and the receipt of disciplinary letters was insufficient to establish a causal connection). *See also Stavridis v. Energy Absorption Systems, Inc.*, No. 98-6828 (11th Cir. Nov. 16, 1999) (unpublished opinion, at 6) (a case in which the plaintiff was terminated eleven months after filing his first EEOC

charge, and five months after filing his second EEOC charge, and the Eleventh Circuit held that "any slight inference of retaliation that may arise as a result of . . . temporal proximity is outweighed by the overwhelming evidence of [plaintiff's poor job performance] . . . .").

Defendant argues that plaintiffs cannot prevail on their retaliation claim because the lay-off and hour reduction did not occur until more than eight months after plaintiffs filed their EEOC charges.[53]  Defendant further argues that it presented a legitimate non-discriminatory reason for the lay-off and hour reduction: part-time employees' hours were reduced to prevent having to pay full-time benefits, and the lay-off was due to lack of work.  The hour reduction and lay-off applied to part-time employees regardless of race or gender.  Plaintiffs' response to this argument is merely one sentence that utterly fails to address the arguments presented by defendant.[54]  This does not satisfy plaintiffs' burden in responding to a motion for summary judgment that is supported by relevant legal authority and evidence.  The court agrees with defendant that it has presented a legitimate, non-discriminatory reason for the hours reduction and lay-off, and that plaintiff has failed to meet its burden to show that this reason was a pretext for retaliation.  Accordingly,

---

[53] *See* doc. no. 32 at 21.  The "eight months" representation is not precise.  Plaintiffs filed charges of discrimination with the EEOC in November 2003.  *See* doc. no. 32 at 10.  Part-time employees were limited to working 32 hours per week in the Spring of 2004.  *See id.*  The lay-off occurred in late Summer/early Fall of 2004.  *See id.* at 10-11.

[54] *See* doc. no. 38 at 36.

defendant's motion for summary judgment on plaintiffs' retaliation claim is due to be granted.

D.      Negligent Training, Supervision, and Retention

Plaintiffs' negligent training, supervision, and retention claim is directly linked to plaintiff's claims of discrimination and harassment.[55]   In response to defendant's motion for summary judgment, plaintiff must come forward with a legal argument and evidence to show defendant is not entitled to judgment as a matter of law.   In response to defendant's motion for summary judgment, plaintiffs only argue that defendant "knew, or should have known, of the unworthiness of Clark both at his hiring, and when he harassed the plaintiffs in front of his supervisors."[56]   Without citation to any evidence to support this claim, it is difficult to discern what facts support plaintiffs' negligent training, supervision, and retention claim.   In other portions of their responsive brief plaintiffs refer to Clark's previous employment with the City of Huntsville, wherein Clark was suspended and ultimately resigned prior to being employed by VBC.[57]   What plaintiffs fail to do is explain how the issues that

---

[55] See doc. no. 1 at 8-9 (Complaint).  It is important to note that this claim does not include a claim for negligent hiring.  See doc. no. 44 at 1 (". . . plaintiffs have not attempted to add a claim of negligent hiring.").

[56] Doc. no. 38 at 37.

[57] When Clark worked for the City of Huntsville, he purchased a mirror for a remodeling job for a private client, and submitted the invoice to the City of Huntsville for payment.  See doc. no. 38 at 11.   Clark personally paid the invoice before the City of Huntsville had notice, but he was suspended as a result, and ultimately he resigned.  See id.  See also doc. no. 41 at 3 (Defendant's Reply).  Clark did not reveal these facts when he applied for and was hired to work for VBC the

led to Clark's suspension and resignation from his employment with the City of Huntsville, had defendant known about them, could support plaintiffs' claims that defendant's negligence caused Clark's alleged harassment.   Further, because plaintiffs' response to defendant's summary judgment motion focuses upon the alleged harassment as the tortious conduct forming the basis of their charge of negligent training, supervision and retention, the claim must also fail in that the court has found that plaintiffs' hostile work environment claims fail as a matter of law. Finally, the summary judgment evidence indicates that when defendant became aware of any conduct that could be considered as illegal harassment, it took appropriate remedial action.[58]   In order to succeed, plaintiffs must show that VBC was aware of purported tortious conduct and failed to take adequate remedial steps to correct the situation.   *See Potts v. BE&K Construction Company*, 604 So. 2d 398, 400 (Ala. 1992).  Plaintiffs fail to meet their burden on this issue, and thus, summary judgment is due to be granted.

## PART FOUR

### *Motion to Strike*

Defendant moves to strike portions of plaintiffs' brief in opposition to summary judgment and portions of Exhibits 25, 26, and 27 of plaintiffs' evidentiary submission

---

same month he resigned from the City of Huntsville.  *See* doc. no. 38 at 12-13.

[58] *See* doc no. 32 at 7-8.

in opposition to summary judgment.[59]   Defendant complains that plaintiffs are attempting to add a claim for negligent hiring that is not present in their complaint, by presenting arguments to support a negligent hiring claim in their response to defendant's motion for summary judgment.   While plaintiffs do appear to make numerous references to the negligent hiring of Clark, plaintiffs have conceded that they are not attempting to add a belated claim for negligent hiring.[60]

Defendant also contends that portions of plaintiffs' evidentiary submissions contain inaccurate information or amount to hearsay.  Because the court did not have to rely on the challenged exhibits in denying defendant's motion for summary judgment on the disparate pay claims, the motion to strike should be denied as moot. The court makes no ruling as to whether these exhibits would be admissible at trial either in their present form or in a corrected form.

## PART FIVE

### Conclusions and Orders

For the foregoing reasons, defendant's motion for summary judgment is GRANTED IN PART AND DENIED IN PART.  Defendant's motion for summary judgment is granted with respect to plaintiffs' claims for hostile work environment on the basis of race or gender, retaliation, and negligent training, supervision, and

---

[59] *See* doc. no. 39.

[60] *See* doc. no. 44 at 1.

retention.  Defendant's motion for summary judgment on the disparate pay claims is denied.  Plaintiffs' claims for hostile work environment, retaliation, and negligent training, supervision, and retention are dismissed with prejudice.  Plaintiffs' claims alleging disparate pay on the basis of race and gender remain.[61]

Defendant's motion to strike is DENIED AS MOOT.

DONE this 8th day of February, 2007.

_____
United States District Judge

---

[61] These claims arise under both Title VII and the Equal Pay Act.